[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANTS' MOTION TO STRIKE
In this case, the plaintiff, a minor child, claims she became lead poisoned while residing in premises owned by the defendants General Urban Corporation ("General") and Frank Nasti ("Nasti"). The first through seventh counts of the plaintiff's Revised Complaint dated March 6, 1996 are directed against General and the eighth through fourteenth counts are directed against Nasti. The defendants move to strike counts 1, 3, 4, 8, 10, and 11.
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted." Waters v.Autuori, 236 Conn. 820, 825, ___ A.2d ___ (1996). "If facts provable under the allegations would support a defense or a cause of action, the motion to strike must be denied." RK Constructors,Inc. v. Fusco Corp., 231 Conn. 381, 384, 650 A.2d 153 (1994). "[F]or the purpose of a motion to strike, the moving party admits CT Page 907 all facts well pleaded." Id., 383 n. 2. "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. The court must construe the facts in the complaint most favorably to the plaintiff." Waters, supra, 236 Conn. at
A motion to strike "admits all facts well pleaded; it does not admit legal conclusions or the truth or accuracy of opinions
stated in the pleadings." (Emphasis in original.) Mingachos v.CBS, Inc., 196 Conn. 91, 108, 491 A.2d 368 (1985). "If the motion attacks the entire pleading, it will fail if any part of the pleading is legally sufficient." Grier v. West Haven PoliceDept., 40 Conn. Sup. 221, 222, aff'd, 8 Conn. App. 142 (1984).
First and Eighth Counts (Negligence Per Se)
The defendants move to strike the first count as to General and the eighth count as to Nasti on the ground that these counts allege a private cause of action based on the violation of certain specified landlord-tenant laws. The plaintiff responds that these counts allege negligence per se and are sufficient as a matter of law. The defendants reply that these counts still fail because they do not allege negligence or notice. The defendants also claim that if the counts are sufficient to allege negligence per se, the allegations should not be pleaded separately but rather must be incorporated in the negligence counts against them.
In Gore v. People's Savings Bank, 235 Conn. 360,665 A.2d 1341 (1995), the Supreme Court determined that the presence of toxic levels of lead paint in leased premises in violation of Conn. Gen. Stat. §§ 47a-7, 47a-8 and 47a-54f can constitute actionable negligence per se. Moreover, the Gore court clearly accepted the proposition that statutes and regulations may impose additional duties or obligations upon landlords beyond their limited common law duties the violation of which may constitute negligence per se. Id., 375, 378-80. See 2 Restatement (Second), Property, Landlord and Tenant, § 17.6 (1977).
In paragraphs 6(a)-(c) of the first and eighth counts of the Revised Complaint, the plaintiff alleges that in violation of Conn. Gen. Stat. §§ 47a-7, 47a-8 and 47a-54f and other statutes and regulations,[1] the defendants leased to and allowed a mother and her minor child to inhabit certain premises, failed to properly inspect the premises to determine whether it contained dangerous, hazardous and toxic levels of lead paint, and failed CT Page 908 to properly "de-lead" the premises before or during the period of inhabitation. Based on the principles of Gore, these allegations are sufficient to state a cause of action for negligence per se. See Cruz v. Tosado, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 531845 (May 22, 1995, Hennessey, J., 14 Conn. L. Rptr 272); Guitierrez v.Jefferson Street Medical Building, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 529230 (September 27, 1994, Hennessey, J. 12 Conn. L. Rptr 472).
The absence of the word "negligence" in these counts is not fatal to their legal sufficiency. Paragraph 6 alleges certain specific acts or omissions which the plaintiff claims violate the pertinent statute or regulation. See Gore, supra,235 Conn. at 376; Wendland v. Ridgefield Construction Services. Inc.,184 Conn. 173, 178, 439 A.2d 954 (1981). The plaintiff has also alleged (¶ 7) that there is a causal connection between the act or omission and the injuries. These allegations are adequate to state a cause of action in negligence per se. Commercial Union InsuranceCo. v. Frank Perrotti Sons. Inc., 20 Conn. App. 253, 258,566 A.2d 431 (1989), citing Wu v. Fairfield, 204 Conn. 435, 438,528 A.2d 364 (1987).
The plaintiff's failure to allege actual or constructive notice of a defective condition violative of statute or regulation[2] poses a more difficult question regarding the legal sufficiency of these counts. The defendants argue that specific allegations of notice are essential to state a cause of action under Gore. However, Gore does not stand for that proposition.
While the Gore court stated that "the common law of Connecticut has always included a notice requirement as part of a tenant's cause of action," Gore, supra, 235 Conn. at 388, it also recognized that a defendant landlord can avoid liability upon proof that the landlord "`neither knows nor should know of the occasion for compliance'" with the statute. Id., 377, citing 2 Restatement (Second), Torts § 288A (1965). Thus, upon remand, inGore v. People's Savings Bank, 40 Conn. App. 219, 224 n. 5,670 A.2d 332 (1996) (Gore II), the Appellate Court approved the trial court's jury instructions placing the burden of proof on the defendant landlord to show a lack of notice or knowledge if the defective condition existed before the tenant moved into the premises, while requiring the plaintiff to prove actual notice of the condition if it arose after the plaintiff moved into the leased premises. CT Page 909
This approved allocation of the burden of proof is consistent with the commentary to 2 Restatement(Second), Property, Landlord and Tenant, § 17.6, comment (c) (1977), that a landlord ordinarily "will be chargeable with notice of conditions which existed prior to the time that the tenant takes possession." Moreover, it is consistent with a long line of Connecticut Supreme Court cases holding landlords liable in negligence for known patent and latent dangerous and defective conditions that existed at the time the lease was made. Webel v.Yale University, 125 Conn. 515, 521, 7 A.2d 215 (1939); Minerv. McNamara, 81 Conn. 690, 694, 72 A. 188 (1909). Indeed, the cited cases were early pioneers in a line of cases recognizing exceptions to the general rules of nonliability in tort for landlords See Jacobs, "Tort Liability of a Connecticut Landlord," 15 Conn. B.J. 315 (1941); W. Prosser W. Keeton, Torts (5th ed. 1984) § 63.
In this case, the first and eighth counts allege that the defendants leased premises that exposed the plaintiff to dangerous, hazardous and toxic levels of lead (¶ 5) and failed to "de-lead" the premises before the plaintiff inhabited the premises (¶ 6(c)). These minimal allegations, read in the light most favorable to the plaintiff, support a claim that an alleged defect violative of statute or regulation existed before or at the time the plaintiff moved into the premises, thus imputing notice to the defendant landlords. These allegations are sufficient to allow these counts to survive a motion to strike.
Lastly, the defendants claim that the allegations of negligence per se cannot be pleaded separately but must be incorporated in the negligence counts of the revised complaint. However, negligence per se has been recognized as an independent cause of action, Commercial Union Ins. Co. v. Frank Perrotti Sons. Inc., supra, 20 Conn. App. at 258, that may be pleaded separately from common law negligence. See MountaindaleCondominium Assn. v. Zappone, Superior Court, judicial district of Litchfield, Docket No. 067279 (Sept 6, 1995, Pickett, J.);Blackburn v. Miller-Stephenson Chemical Co., Superior Court, judicial district of Danbury, Docket No. 314089 (Jan. 12, 1995, Stodolink, J., 13 Conn. L. Rptr. 364).
Negligence per se provides a different theory of recovery from common law negligence. CT Page 910
 "Where a statute is designed to protect persons against injury, one who has, as a result of its violation, suffered such an injury as the statute was intended to guard against has a good ground of recovery." Knybel v. Cramer, 129 Conn. 439, 443, 29 A.2d 576; Coughlin v. Peters, 153 Conn. 99, 102, 214 A.2d 127. That principle of law sets forth two conditions which must coexist before statutory negligence can be actionable. First, the plaintiff must within the class of persons protected by the statute. . . . Second, the injury must be of the type the statute was intended to prevent. . . . (Citations omitted)
 Wright v. Brown, 167 Conn. 464, 468-69, 356 A.2d 176 (1975). See Small v. South Norwalk Savings Bank, 205 Conn. 751, 760,535 A.2d 1292 (1988).
In a negligence per se case, the governing statute or regulation may impose affirmative duties upon the defendant beyond those imposed by common law and it is irrelevant whether the defendant's conduct was that of a reasonably prudent person,Gore, supra, 235 Conn. at 375-76; Wendland v. RidgefieldConstruction Services. Inc., supra, 184 Conn. at 178. Moreover, a valid excuse or justification for the violation of the law can provide a defense. Gore, supra, 235 Conn. at 376; 2 Restatement (Second), Torts § 288A (1965). Thus, a negligence per se count "transforms the character of the factfinder's inquiry," Wendland,
supra, 184 Conn. at 178, from that required under allegations of common law negligence.
Accordingly, for all the reasons stated above, the defendants' motion to strike the first and eighth counts of the Revised Complaint is denied.
Counts 3 and 10 (Absolute Nuisance)
The defendants move to strike the third as to General and the tenth count as to Nasti claiming they fail to assert the necessary elements of absolute nuisance, particularly that the defendants intended to bring about the conditions claimed to be a nuisance. Further, the defendants argue that the plaintiff, as a tenant of the defendant landlords, cannot sue them in nuisance because the landlord does not control the demised premises. The plaintiff responds that: the elements of absolute nuisance have been alleged, defendants' intent in renting the premises CT Page 911 suffices, control is a question of fact and both statute and regulation have created non-delegable duties regarding lead-based paint hazards within the premises that modify the common law regarding control.
The tort of private nuisance provides recourse for a property owner or occupier of land whose use and enjoyment of the property is intentionally interfered with by a condition created by another. Prosser, supra, § 87. Typically, an action in private nuisance provides a remedy for damages sustained from conditions, for example vibrations, blasting, pollution of streams, or unpleasant odors, that are created outside of the affected property but directly affect its use and enjoyment. "`Nuisance is a word often very loosely used; it has been not inaptly described as "a catchall of ill-defined rights."'"Kostyal v. Cass, 163 Conn. 92, 99, 302 A.2d 121 (1972) quotingGonchar v. Kelson, 114 Conn. 262, 271, 158 A. 545 (1932).
The elements of private nuisance are: "(1) the condition complained of had a natural tendency to create danger and inflict injury upon person or property; (2) the danger created was a continuing one; (3) the use of the land was unreasonable or unlawful; (4) the existence of the nuisance was the proximate cause of the plaintiffs' injuries and damages." Filisko v.Bridgeport Hydraulic Co., 176 Conn. 33, 35-36, 404 A.2d 889
(1978). See State v. Tippetts-Abbett-McCarthy-Stratton,204 Conn. 177, 183, 527 A.2d 688 (1987); Green v. Ensign-Bickford Co.,25 Conn. App. 479, 490, 595 A.2d 1383 (1991). "An absolute nuisance is one grounded in conduct which is intentional, not negligent. Beckwith v. Stratford, 129 Conn. 506, 510-11,29 A.2d 775 (1942). `Intentional,' in this context, means, `not that a wrong or the existence of a nuisance was intended but that the creator of [it] intended to bring about the conditions which are in fact found to be a nuisance.' Id., 511; DeLahunta v.Waterbury, 134 Conn. 630, 634, 59 A.2d 800 (1948)." Dingwell v.Litchfield, 4 Conn. App. 621, 624, 496 A.2d 213 (1985).
The complaint alleges that, pursuant to a lease agreement, the plaintiff leased and inhabited the premises and was exposed to dangerous, hazardous and toxic levels of lead paint on the interior and exterior surfaces "the existence of which has a natural tendency to create danger, especially to children under the age of six" (¶ 5). It further alleges that the existence of toxic levels of lead paint was violative of statute and regulation[3] and thus "constitutes an absolute nuisance" (¶ 6). CT Page 912
To be actionable, absolute nuisance requires that the defendants acted intentionally "to bring about the conditions which are in fact found to be a nuisance." Beckwith v.Stratford, 129 Conn. 506, 511, 29 A.2d 775 (1942). In their memorandum, the plaintiffs state that "the condition complained of," i.e. the nuisance, is "the presence of intact and defective lead-based paint." Memorandum of Law in Opposition to Motion to Strike, p. 9. They argue that allegations that the defendants rented the premises to a family with children under the age of six thereby exposing the minor plaintiffs to the painted surfaces of the premises suffice as the requisite intentional act that brings about this condition.[4]
The defendants counter that the intentional act must be the condition or bring about the condition claimed to be a nuisance and that the act of renting premises, even as alleged, does not suffice. The court agrees and accordingly must strike these counts.
The court sees no direct or inherent relationship between the landlord's act, albeit intentional, of leasing premises to a family with children under the age of six and the condition claimed to be a nuisance — the presence of intact and defective lead-based paint. Moreover, the court has grave concerns that recognizing a cause of action in absolute nuisance under facts as alleged would open a "back door" to holding landlords strictly liable for lead-based paint hazards in contravention of both legislative intent and the holding in Gore, supra.
"A nuisance . . . describes an inherently dangerous condition that has a natural tendency to inflict injury upon persons or property. State v. Tippetts-Abbett-McCarthy-Stratton,
204 Conn. supra, at 183. The term nuisance refers to the condition that exists and not to the act or failure to act that creates it. If the creator of the condition intends the act that brings about the condition found to be a nuisance, the nuisance thereby created is said to be absolute and its creator is strictly liable. DeLahunta v. Waterbury, 134 Conn. 630, 633-34,59 A.2d 800 (1948)." Quinnett v. Newman, 213 Conn. 343, 348,568 A.2d 786 (1990). When an absolute nuisance is alleged, contributory negligence is not a defense because "the essence of the wrong is conduct which is intentional . . . that conduct goes beyond a mere lack of proper care. . . ." Beckwith v. Stratford,
supra, 129 Conn. at 511. CT Page 913
If the act of renting premises to a family unit with children under six who will be exposed to its painted surfaces suffices to state a cause of action in absolute nuisance then the effect would be to hold a landlord strictly liable for a defect of which the landlord was unaware or could not have become aware in the exercise of reasonable care. The allegation that the existence of lead paint in intact and nonintact conditions was violative of statute and regulation does not, in the court's opinion, convert the act of renting the apartment into an absolute nuisance. Unlike the negligence per se count, where a defendant landlord can defend on the ground of lack of knowledge of any defect at the time of leasing the premises or assert another valid excuse or justification for violating the statutes or regulations, here proof of the intentional act of renting the premises which may have contained defects violative of statute or regulation would suffice to hold the landlord liable for tort damages. Such liability would fly in the face of Gore, supra,235 Conn. at 383.
Moreover, courts have been reluctant to allow tenants to proceed against landlords in nuisance, principally because the tenant is deemed in exclusive control of the demised premises. "When a tenant takes exclusive possession of demised premises, he ordinarily takes them as he finds them, and the landlord is not liable for structural defects therein except those which the tenant could not discern with reasonable diligence and with knowledge of which the landlord was chargeable. Masterson v.Atherton, [149 Conn. 302] supra, 306; DesMarchais v. Daly,135 Conn. 623, 626, 67 A.2d 549; Webel v. Yale University,125 Conn. 515, 518, 7 A.2d 215. No cause of action sounding in nuisance is available to the tenant against his landlord. Collette v. Piela,141 Conn. 382, 386, 106 A.2d 473." Bentley v. Dynarski,150 Conn. 147, 153, 186 A.2d 791 (1962).
To avoid this seemingly insurmountable barrier, the plaintiff argues that the statutes and regulations impose a non-delegable duty upon the defendant landlords to abate defective lead-based paint surfaces on both the interior and exterior of the demised premises, thus making the condition of those surfaces one that always remains in the landlord's control. There are several problems with this argument.
First, the plaintiffs contend that the statutes and regulations modify common law landlord-tenant principles CT Page 914 regarding control. The Gore court has specifically rejected the contention that Conn. Gen. Stat. §§ 47a-8 and 47a-54f modify the common law elements of landlord premises liability. Gore, supra,235 Conn. at 372. This court believes that this contention would likewise be rejected with respect to the other cited statutes and regulations. As was noted in Gore, "as a matter of common-law, a tenant's claim for injuries caused by lead-based paint in theapartment would depend upon proof of control and actual or constructive notice of the conditions giving rise to the defective conditions caused by the lead-based paint." (Emphasis added) Id., 374.
Second, to accept plaintiff's argument effectively would impose strict liability upon the defendant landlords in contravention of the policy articulated in Gore. Third, while the landlord may have certain non-delegable statutory and regulatory duties with respect to lead-based paint hazards, allegations of a breach of those duties support a cause of action for negligence or negligence per se but not for absolute nuisance. See Webel, supra, 125 Conn. at 525-26; Muir v. HousingAuthority, 24 Conn. Sup. 439, 440, 193 A.2d 602 (1963).
The only other allegation in the complaint to establish the requisite control is that the defendants were each "an owner of record, landlord and otherwise in control" of the premises. The court recognizes that control is a question of fact, State v.Tippetts-Abbett-McCarthy-Stratton, supra, 204 Conn. at 185, and that other judges of this court have found a cause of action in nuisance to be stated against a landlord when the complaint alleges a defective condition in an area within the landlord's control. See Hall v. Riveria, Superior Court, judicial district of New Haven, Docket No. 049449 (Oct. 29, 1996, Skolnick, J.);Cruz v. Tosado, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 531845 (May 22, 1995, Hennessey, J.).; see generally Delgado v. Learmand, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 471591 (July 12, 1996, Arena, J., 2 Conn. Ops. 883) (opinion did not address control). The court concludes, however, that the allegation that the defendants were "otherwise in control" is conclusory, not factual, and is insufficient.
Accordingly, for all the reasons stated above, the motion to strike the third and tenth counts is granted.
Counts 4 and 11 (Abnormally dangerous activity)
CT Page 915
The defendants move to strike the fourth count as to General and the eleventh count as to Nasti on the grounds that the plaintiff has failed to state a cause of action as a matter of law because lead paint exposure in residential property is not an "abnormally dangerous" activity. The plaintiffs respond that the presence of defective lead-based paint in premises where a child under the age of six resides creates an "unavoidable risk of causing harm" and therefore that the defendants' conduct in leasing premises with alleged toxic levels of lead paint in a defective condition is an abnormally dangerous activity.
The classification of an activity as abnormally dangerous imposes strict liability on a person who chooses to engage in that activity. Caporale v. C.W. Blakeslee Sons, Inc.,149 Conn. 79, 86, 175 A.2d 561 (1961); Whitman Hotel Corp. v. Elliott andWatrous Engineering Co., 137 Conn. 562, 570, 79 A.2d 591 (1951);Green v. Ensign-Bickford Co., 25 Conn. App. 479, 482,595 A.2d 1383 (1991). Whether an activity is "abnormally dangerous" is a question of law for the court to decide. Caporale v. C.W.Blakeslee Sons, Inc., supra, 149 Conn. at 86.
The few activities which have been classified as abnormally dangerous by our courts are blasting, Whitman v. Elliott Watrous Eng. Co., supra; Worth v. Dunn, 98 Conn. 51, 118 A. 467
(1922); using a pile driver, Caporale v. C.W. Blakeslee Sons,Inc., supra; and conducting research with highly volatile chemicals; Green v. Ensign-Bickford Co., supra. Other activities, even those with the potential to cause great harm, have not been classified as abnormally dangerous. (For example, transmission of natural gas for home use, Dunphy v. Yankee GasServices Co., Superior Court, judicial district of New Haven at Meriden, Docket No. 246428 (Oct. 23, 1995, Silbert, J.); storage and removal of gasoline from underground tanks, Burns v. LehighInc., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 342600 (July 12, 1988, Hennessey, J.,3 CSCR 722); maintaining and operating high tension wires, Plourdev. Hartford Electric Light Co., 31 Conn. Sup. 192, 326 A.2d 848
(1974)).
"It appears . . . that Connecticut courts have sought to restrict the use of the doctrine to situations where the dangerous instrumentality is used in such circumstances as to create an unavoidable risk of damage." (Emphasis in original.)Gutierrez v. Jefferson Street Medical Bldg., Superior Court, CT Page 916 judicial district of Hartford-New Britain at Hartford, Docket No. 529230 (Sept. 27, 1994, Hennessey, J.). An activity is deemed abnormally dangerous when it cannot be done without unavoidable risk of harm and the actor is unable "to eliminate the risk by the exercise of reasonable care." The Connecticut Water Co. v.Thomaston, Superior Court, judicial district of Hartford, Docket No. 535590 (March 4, 1996, Corradino, J.), quoting the Restatement (Second) Torts § 520(c).
The plaintiff argues that § 19a-111-2 (a) of the Regulations of Connecticut State Agencies, requiring abatement of defective lead-based surfaces in dwellings where children under the age of six reside, demonstrates that such premises pose an unavoidable risk of harm to minor children. The plaintiff also relies on distinctions made in the regulatory scheme between surfaces that do and do not need to be abated, § 19a-111-2 (c) and (e), as evidence that defective lead-based paint surfaces must be deemed inherently dangerous. This argument was cogently rejected by Judge Hennessey in Gutierrez, supra: The "regulations . . . demonstrate that the dangers associated with lead-based paint can be avoided, so long as landlords comply with the statutory and regulatory schemes governing lead-based paint." Thus, since the landlord, in the exercise of reasonable care, is able to eliminate the risk of lead-based paint through inspection and abatement of defective surfaces, the doctrine of abnormally dangerous activity is inapplicable.
Moreover, accepting the plaintiff's argument that it is abnormally dangerous to rent premises to a family with children under six, where defective lead-based paint is allegedly present, would, in effect, hold landlords strictly liable. In Gore, the Supreme Court explicitly declined to find a legislative intent to impose strict liability for lead-based paint hazards on landlords. "Although the plaintiffs point to the language of §§47a-7 and 47a-8 and their legislative histories as indicating a legislative intent to provide strict liability, we can discern no such legislative intent." Gore, supra, 235 Conn. at 383. Given this clear directive, this court will not impute such liability indirectly by classifying the act of leasing premises in a condition that may be violative of the regulatory scheme as an abnormally dangerous activity.
The Superior Court has been consistent in rejecting claims of abnormally dangerous activity in lead paint poisoning cases.Hall v. Rivera, Superior Court, judicial district of Milford, CT Page 917 Docket No. 049449 (Oct. 29, 1996, Skolnick, J.); Wilson v.Bellisle, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 546030 (Oct. 3, 1996, Hennessey, J.); Scott v. Duhl, Superior Court, judicial district of New Haven, Docket No. 379299 (Sept. 30, 1996, Corradino, J.); Delgadov. Learmand, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 471591 (July 12, 1996, Arena, J.); Leblanc v. Munger, Superior Court, judicial district of Windham at Putnam, Docket No. 052267 (March 13, 1995, Sferrazza, J.); Gutierrez v. Jefferson Street Medical Bldg., supra. This court finds no reason to hold differently. Accordingly, the defendants' motions to strike counts 4 and 11 are granted.
Conclusion
The defendants' motion to strike counts 1 and 8 is denied. The defendants' motion to strike counts 3, 4, 10 and 11 is granted.
LINDA K. LAGER, JUDGE