KING v. CONSOLIDATED GAS COMPANY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. January 15, 1904.)

1. GAS—EXPLOSION—PERSONAL INJURIES — NEGLIGENCE OF GAS COMPANY—EVIDENCE.

In an action against a gas company for damages for personal injuries it appeared that an odor of gas was noticed, of which the defendant was notified, and its inspectors made an examination, and reported that there was no leak in the building from any of its pipes, and that, if any leak existed, it was in the pipes belonging to the landlord. The janitress employed plaintiff, a tenant of the building, and plumber by trade, to

repair the leak. Plaintiff proceeded into the cellar with a lighted candle to find the leak, and an explosion occurred, in which plaintiff was injured. *Held*, that plaintiff's injuries were not chargeable to the negligence of defendant.

Appeal from Trial Term, New York County.

Action by Max King against the Consolidated Gas Company of New York. From a judgment for plaintiff, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

David McClure, for appellant.
Max D. Steuer, for respondent.

INGRAHAM, J. By this action the plaintiff sought to hold the defendant responsible for an injury sustained by him in consequence of the explosion of gas in the cellar of a tenement house in which the plaintiff resided. The defendant is engaged in supplying illuminating gas in the city of New York, and supplied such gas for the premises in question, and for that purpose maintains gas mains in the street and a service pipe connecting such mains with the gas pipes in the building. The complaint alleges that this service pipe connecting the defendant's mains with the gas pipes in the house was connected with a small pipe or drip pipe placed in said building and owned by the defendant; that on and prior to the 18th of February, 1899, the thread connecting the supply pipe with the drip pipe contained a leak and was unfit for the use for which it was intended, and was in such a bad state and condition and in such ill repair that gas was permitted to and did escape; that on the 18th of February, 1899, the defendant was informed that gas was escaping from its pipes in the cellar of the premises No. 1442 Avenue A, and the defendant was required to examine the said pipes and repair the same, and that thereafter, and on the said 18th day of February, 1899, the defendant sent two of its agents to examine the premises, who entered the cellar, and thereafter reported that the pipes in said cellar were all right, and were not in a condition of ill repair, and contained no leaks, and that there was no escape of gas in said cellar; that within a few minutes after such statement "this plaintiff, for the purpose of examining the cause of the stench, and relying upon the statements of the defendant's inspectors, agents, and employés, and believing that there was no gas escaping in said cellar, and that there were no leaks in the pipes, lit a candle, and was about to enter the said cellar, and had stepped on the first step of the staircase leading to the said cellar, when immediately there was an explosion of gas in said cellar," and the plaintiff was injured.

The plaintiff testified that he resided at the premises in question, and was a plumber by trade; that at about 12 o'clock on the 18th day of February, 1899, he noticed a smell of gas in the house, and saw the men there who were employés of the defendant; that he saw them go into the cellar, and after a few minutes they came out; that the plaintiff asked them if they had found any leak in the cellar,

to which they replied, "No, we can't find no leak in the cellar; the cellar is everything all right;" that after that the defendant's inspectors left; that about 10 minutes after this interview the plaintiff, at the request of the janitor of the house, started to go into the cellar to turn off the gas for the house; that at that time there was a smell of gas through the house; that the plaintiff took a lighted candle, opened the cellar door, stepped down two steps upon the cellar stairs, when the explosion occurred, seriously injuring the plaintiff. Upon cross-examination he stated that he had been in the habit of doing plumbing work in the building at the request of the landlord; that just after the employés of the defendant left the premises, the janitress of the building came out and asked the plaintiff to go down; that at that time he did not notice much of a smell of gas; that it was not so strong as when he went down in the morning; that he got a candle from the janitress and lighted it to open the cellar door.

A tenant in this building, called by the plaintiff, testified that he noticed the smell of gas early in the morning, and telephoned to the defendant; that in about half an hour after, the defendant's inspectors came to the building, went down in the cellar, and made an examination and reported to the janitress that they had looked after everything carefully, and found that there was no mistake in the company's pipes; that there must be a mistake on the landlord's side; that the housekeeper must get a plumber and that the mistake must be somewhere in the ceiling; that they did not know, but it was not on their side; that the plumber for the house was the plaintiff.

There was no evidence on behalf of the plaintiff as to where the leak that occasioned this explosion was, and at the end of the case the defendant moved to dismiss the complaint. This motion was denied, and the defendant excepted. The inspector who made the examination for the defendant testified that when he arrived at the house he was informed by the janitress that there was a smell of gas in the halls; that there were three different cellars to the building, and that he went into them all; that he went around with a candle and examined the service pipes in the three cellars; that he was there about 15 or 20 minutes; that he found no smell of gas of any kind in the cellars; that with the connection with the pipes that run up through the house there was a fixture called a "T"; that the end of this fixture fits into the pipe that comes from the main; that there is a nut or cap upon the bottom of this fixture, and the open part of the fixture communicated with the pipes that carry gas up through the house; that the witness noticed such a fixture in the rear cellar; that when he examined this fixture he found the plug or cap screwed onto it; that it was in place, and fastened, and that there was no gas escaping through it; that after the explosion the witness was again sent to make an examination of the premises, accompanied by an inspector of the defendant; that he found the cap or nut, which, when he examined the pipe before had been screwed on tight, was off and a cork was inserted in the pipe in its place; that this cork must have been put in after the explosion; it was not there when he first visited the premises, and it was there when he went back after the explosion; that this cork was keeping the gas from coming out of the pipe;

that he examined all the pipes in the cellar, and the only change that he noticed was that this cork was inserted in the pipe in the place of the plug or cap which was there when he made his first examination; that this "T" fixture was not connected with the pipes put in by the defendant; that it is fully 25 feet back; that it was put there by the owner of the building; that the witness was not instructed to examine the building, except so far as to see whether there was a leak in the company's pipes; that the company's pipes stopped when they came in through the main foundation wall; that the company had inside the house merely the meter connection, a short piece of pipe in the front cellar. This testimony was corroborated by the other employés of the defendant who had examined this fixture.

It is quite evident that there was nothing proved by which the defendant or its employés could be charged with negligence. There is absolutely nothing to show that any portion of the pipes maintained by the defendant was out of order, or that the escape of gas was caused by a leak in the pipes which the defendant was bound to maintain. The only evidence as to the condition of the defendant's pipes is the testimony of the defendant's employés, who, on the second visit, discovered that a nut or cap that covered this fixture had come off, and had been replaced by a cork. That such a condition did not exist when the defendant's employés visited the premises before the explosion is apparent from the fact that they went through the cellar with a lighted candle and there was no explosion. What caused this nut or cap to come off between the time that the defendant's inspectors left and the explosion is purely a matter of conjecture; but, whatever caused this condition, it was certainly no fault of the defendant or its employés, and the company was not responsible for the condition of this fixture, as it was connected with the gas pipes of the house and was not a portion of the pipes installed or maintained by the defendant. All that the defendant's agents were bound to do was to ascertain if the pipes maintained by the defendant were in proper order. That examination they made, and reported to the janitress that their pipes were in order, and that the leak in the house mains came from the pipes maintained by the owner of the premises, and that to stop that leak they must get a plumber. There was here an express notice that the leak was not in the defendant's pipes, but in the pipes belonging to the house, and the subsequent investigation shows that that statement was correct. The landlord or his representative accepted the suggestion made by the defendant's employés, employed the plaintiff as a plumber to repair the leak, he accepted that employment, and, while acting for the owner of the house, caused the explosion by which he was injured. Certainly there can be here no ground to hold that the defendant was negligent.

It follows that the judgment and order appealed from must be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.