JOHN S. REID, as Administrator of the Estate of MARY REID, Deceased, Respondent, v. WESTCHESTER LIGHTING COMPANY, Appellant, Impleaded with Another.

**Negligence — gas and electricity — insufficiency of evidence as to death from asphyxiation — gas company not liable for result of gas escaping from pipe in house in the absence of notice.**

1. The evidence examined, in an action to recover for the death of plaintiff's intestate alleged to have been the result of asphyxiation by illuminating gas, and held that there was nothing therein to justify a verdict that she died from that cause.

2. A gas company is obligated, before it turns on the gas, to know that the pipes in the house are in proper condition and that the gas, when turned on, will not escape. Beyond that, unless it assumes control of the pipes in the house, liability, in the absence of notice, does not attach to it for escaping gas. The pipes in the house are owned and controlled by the owner of the building and it is his business, as the landlord, or his tenant, to keep them in repair, and if gas escapes, to notify the gas company.

*Reid* v. *Westchester Lighting Co.*, 204 App. Div. ▓▓▓▓ ▓versed.

(Argued June 6, 1923; decided July 13, 1923▓

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered December 7, 1922, affirming a judgment in favor of plaintiff entered upon a verdict.

*Chauncey B. Garver* for appellant. No negligence was shown on the part of the appellant. (*Schmeer* v. *Gas Light Co.*, 147 N. Y. 529, 541; *Pernick* v. *Central Union Gas Co.*, 183 App. Div. 543; 228 N. Y. 594; *King* v. *Consol. Gas Co.*, 90 App. Div. 166; *Hammerschmidt* v. *Munic. Gas Co.*, 113 App. Div. 290; *Mowers* v. *Munic. Gas Co.*, 142 App. Div. 169.)

*John Ambrose Goodwin, Leonard F. Fish* and *Thomas J. O'Neill* for respondent. The appellant lighting company well knew that its dangerous illuminating gas was passing through the pipes in the house where intestate was killed, and should have cut it off at the curb as it readily could have done. (*Schmeer* v. *Gas Light Co.*, 147 N. Y. 529; *Hayes* v. *Cohoes Gas Co.*, 183 App. Div. 182; *Webster* v. *Richmond L. & P. Co.*, 158 App. Div. 210; *Anderson* v. *Gas Co.*, 17 Misc. Rep. 627; *Tiehr* v. *Gas Co.*, 65 N. Y. Supp. 10; *Siebrect* v. *Gas Co.*, 47 N. Y. Supp. 262; *German Ins. Co.* v. *Gas Co.*, 17 N. Y. Supp. 384; *Evans* v. *Gas Co.*, 148 N. Y. 112.)

McLAUGHLIN, J. Action to recover damages for the death of plaintiff's intestate, alleged to have been caused by the negligence of the lighting company in permitting the escape of illuminating gas. The intestate died on the 29th of March, 1920, at No. 12 Grand street, New Rochelle, N. Y., in a house owned by the defendant McNamara, where she had lived with her husband for about two years. The lighting company was engaged in the sale and distribution of illuminating gas and for that purpose had a pipe in the street from which gas was supplied to consumers. It formerly had a meter in the premises in question, but it had been removed

several years before and thereafter no gas was consumed therein. At the trial the complaint was dismissed as to the defendant McNamara and the case sent to the jury to determine whether the lighting company were negligent in not shutting off the gas at the connection between its main in the street and the service pipe running into the house. The jury rendered a verdict in favor of the plaintiff for $4,500, and the judgment entered thereon was affirmed by the Appellate Division, one justice dissenting.

I do not think the evidence justified a finding that the death of the intestate was the result of asphyxiation by illuminating gas. No testimony was given by the physician who attended the intestate that in his opinion she came to her death from the cause stated. The result of the autopsy did not disclose that the intestate died from inhaling illuminating gas. The plaintiff's husband left the room where she was subsequently found, about an hour before, and when he returned she was apparently unconscious, and a lamp was then burning in the room. There was evidence to the effect that she had been suffering from kidney trouble for some time. She complained of pains in her back and went to bed shortly before her husband left that evening. When he first saw her on his return she was frothing at the mouth. Whether that were an indication of poisoning by illuminating gas did not appear and I am of the opinion there was nothing to justify a verdict that she died from that cause.

However, assuming that she did, upon the proof presented plaintiff was not entitled to recover. There is nothing to show negligence on the part of the gas company; on the contrary, there is an entire absence of evidence upon which to base a finding to that effect. The gas escaped from a leak in a pipe which protruded some eighteen inches into the room where the deceased was found, the leak being in that part of the pipe which was

between the floor of the room and the surface of the ground. This pipe ran to and connected with the main in the street. There was no cellar under the house and the gas meter which had been originally installed had been removed some fifteen years before, since which time no gas had been there used. The gas company, of course, was obligated, before it turned on the gas, to know that the pipes in the house were in proper condition and that the gas, when turned on, would not escape. Beyond that, unless it assumed control of the pipes in the house, liability, in the absence of notice, did not attach to it for escaping gas. The pipes in the house were owned and controlled by the owner of the building and it was up to him, as the landlord, or his tenant, to keep them in repair, and if gas escaped, to notify the gas company. (*Schmeer* v. *Gas Light Company of Syracuse,* 147 N. Y. 529; *Pernick* v. *Central Union Gas Company,* 183 App. Div. 543; affd., 228 N. Y. 594; *King* v. *Consolidated Gas Co. of N. Y.,* 90 App. Div. 166.)

No evidence was offered tending to establish that gas in the pipes had any deleterious effect upon them. After the gas company removed its meter, it had no right to go into the building for the purpose of inspecting the condition of the pipes. It would have been a trespasser had it done so. It could have prevented the gas going into the pipe in the premises by means of a cut-off near the main, but this cut-off was only used "in case of emergency; in case of fire."

In *Schmeer* v. *Gas Light Co.* (*supra*) the defendant was held liable for escaping illuminating gas because it made no inspection of the pipes in the building to ascertain, before the gas was turned on, whether they were in a fit condition for that to be done. It was held that a question of fact was presented because in one of the rooms pipes were not capped and it was from such pipes that the gas escaped, causing the injury complained

of. Judge PECKHAM, who delivered the opinion of this court in that case, referring to the liability of the gas company, said: " As the company has no control over the piping, does not put it in and is not consulted about it, the principle upon which it might be held liable in cases of this character at the time of the first delivery of gas, if no precaution were taken at all, is simply that it would have the right to refuse to turn on, or permit others to turn on, the gas for the supply of the applicants until properly assured of the condition of the piping in other portions of the building. Having become assured of it, and the gas being on, it would not seem that the company ought further to be regarded as liable for the continuous good condition of the piping. Here we may justly say that to impose such a liability upon the defendant would clearly be unreasonable. It would render necessary the examination at frequent intervals of all the buildings in the city in which gas was used. This would be so onerous as to be practically impossible of execution because of the expense to the company. The law ought not to, and does not, exact an unreasonable amount of care from any one." (p. 541.)

The company had no notice that the gas was escaping or that the pipes were in a defective condition. It had the right to assume, in the absence of such notice, that the owner of the building was seeing to it that the pipes were in proper repair and that gas could not and was not escaping therefrom.

The judgments of the Appellate Division and Trial Term should be reversed and the complaint dismissed, with costs in all courts.

HISCOCK, Ch. J., POUND and ANDREWS, JJ., concur; CARDOZO, J., concurs on ground last stated in opinion; HOGAN and CRANE, JJ., dissent.

Judgments reversed, etc.